[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs Jeffrey J. and Irma Zitzkat sue defendant Home Inspection Professionals, Ltd (hereinafter HIP} in multiple counts of breach of warranty, breach of contract, negligence and violation of Connecticut Uniform Trade Practices Act arising out of a home inspection and report defendant rendered to plaintiff and upon which plaintiffs allegedly relied in purchasing their house.
The facts are as follows: Plaintiffs engaged HIP to perform an inspection of a home they had contracted to purchase in Unionville, Connecticut. The agreement between the parties provided for HIP to conduct a "limited-time inspection of. readily accessible and visible major elements of the building proper . . . according to the latest standards set by the American Society of Home Inspectors." Mr. Patrick Precourt, an employee and principal of HIP met Jeffrey Zitzkat (herein after Zitzkat) at the home on March 25, 1994. Precourt conducted the inspection in the company of Zitzkat. Precourt pointed out CT Page 16129 significant sagging of the kitchen floor, over-extension of a floor joist under the kitchen by two feet, and cracks in the basement floor.
Defendant submitted a home inspection report, dated March 28, 1994, to plaintiffs that stated: "Overview — In the basement area the foundation and framing are judged sound and satisfactory and although very little of the foundation and framing are judged sound structure. However, some settling has been noted. Foundation/Framing — Foundation, main beam, and joists in these areas could not be observed. Considering areas that are visible, in addition to absence of settlement and other observations, house is judged structurally sound. Foundation where visible is of poured concrete construction and judged to be in satisfactory condition overall. Cracks noted are not judged structurally significant. . . . Main beam appears to be in satisfactory condition where visible and properly supported. Steel concrete-filled lally columns are correctly spaced and in good condition. . . . It was noted that some of the joists at back of house are extended a bit further than normal, however, this does not appear to be a structural problem. Floors — Flooring throughout the house is in satisfactory structural condition overall. . . . Significant floor settlement was noted in kitchen area. This appears to be caused by remodeling which has been done in this area, possibly new foundation settling a bit with the weight of this part of the kitchen. Again, this does not appear to be a structural problem."
The report contained a glossary of terms used, including "Satisfactory/Sound — should not incur a substantial expense to repair, replace or correct in the near future."
Mr. Zitzkat testified that relying on the report's assessment of the house as "structurally sound," he purchased the house on May 23, 1994 at the contract price. The evening of the closing Mr. Zitzkat removed some of the carpeting for the purpose of replacing it, and discovered under the hall carpet several inches of roof shingles. He then noticed a distinct sag in the hall and kitchen floors. In June 1994 he hired a contractor, Master Builders, to correct the problem without success. Master Builders charged the plaintiffs $800 for the day's work.
In December 1994 Mr. Zitzkat retained Carl S. Cianci, a professional engineer, to determine the cause of the sagging. Mr. Cianci discovered the house had been originally built in 1969. In CT Page 16130 the middle 1980's the rear basement weight-bearing wall began to settle because the footings were not set sufficiently below the frost line. To correct this situation the then owner, Bruno Talotta, constructed an addition to the rear of the house. This necessitated removing the original rear wall, and replacing it with a new weight-bearing wall two feet beyond it upon which the addition rested. The consequence was that the main weight-bearing beam extended two feet further than normal without a support. Mr. Cianci testified that the first floor of the original house extended beyond the rear basement wall and this had the cantilevering effect of strengthening the support of the main beam. The new weight-bearing wall eliminated that cantilevering effect.
In an attempt to correct the floor sagging, Zitkat jacked up the basement ceiling underneath the kitchen, added a new beam adjacent to the main beam, installed new lally columns where the original retaining wall had been located, and inserted shims on top of several lally columns. This effort did not completely eliminate the sagging. The cost of the materials was $1500, and the cost of repairing some first floor interior finish damaged by the jacking was $500.
Mr. Cianci made a second inspection of the house in April 1999 and noted a widening of the cracks in the basement floor that he ascribed to inadequate soil conditions under the slab. He testified that the house is structurally unsound and that to correct it would require considerable work, including reinforcing the original center beam, installing new sister joists, and replacing the basement slab. Another witness testified this work would cost $56,000, although he could not breakdown this cost as to center beam and basement repairs, and it would result in the house being "like new."
Mr. Don Lucas, the building inspector for the town of Old Saybrook testified he inspected the house in June 1999. He found no roof sag, siding deflection, framing stress, or torn sheet rock, all of which indicated no movement or structural stress. He conceded that the kitchen floor sag could have been caused by removal of the original rear wall when the addition was constructed which extended the span of the center beam and that could constitute an unsound structure. But the beam Zitskat added and the lally columns he installed on the footing of the original rear wall rendered the house now structurally sound, particularly since those footings were now in the interior of the house and so CT Page 16131 not subject to frost heaves.
Mr. Bruno Talotta, former owner of the house, testified that frost heaves in the rear of the original house caused the kitchen floor to sag. On the advice of an engineer, he put on the rear addition, which completely corrected the problem of the inadequate footings. After that there had been no further floor sagging, no sheet rock cracking, and no trim separating.
The American Society of Home Inspectors Standards of Practice provides that "inspectors are not required to: . . . enter any area . . . which may damage the property . . ." and Mr. Lucas confirmed that, pursuant to those standards, inspectors need not remove carpets or panels that could cause damage.
At the request of the parties and with they and their attorneys present, the court inspected the house and allowed Zitzkat to point out defects in the structure.
The essence of plaintiffs claim is that defendant stated in its inspection report that the house was "structurally sound" when in fact it was not and in this regard defendant breached the contract between the parties, an implied warranty, or was negligent. Plaintiffs rely primarily on the testimony of Mr. Cianci that the house was structurally unsound because the widening of cracks in the basement floor between his two inspections indicated the slab was settling due to inadequate soil conditions under it, and because floor sagging indicated abnormal stress on the center beam when the addition was added.
As for the basement floor cracks, Mr. Precourt noted them in his report and stated they were structurally insignificant, as did Mr. Cianci after his first inspection. Moreover, the contract between the parties provided the inspection was limited to "readily accessible and visible major elements of the building proper." The only way the significance of those cracks could have been determined at the time of defendant's inspection would have been to remove the slab which was clearly beyond the terms of the contract, and contrary to standards of the American Society of Home Inspectors on the basis of which the report was rendered. The court concludes plaintiffs failed to prove defendant liable under any count of the complaint based on basement cracks.
As for the abnormal stress on the center beam, while the court does not believe it is as significant as Mr. Cianci CT Page 16132 testified, defendant's witness, Mr. Lucas did state the over extension of the span of that beam compromised the structural soundness of the house. Moreover, the report's glossary defines "sound" as incurring "a substantial expense to repair." Mr. Lucas also testified the repairs Zitzkat did by adding a supporting beam, lally columns and shims on top of the columns corrected the structural defect. The cost plaintiffs incurred in connection with this work and retaining Master Builders for an initial try at it came to $2800. The court finds this amount a "substantial expense to repair" within the meaning of the report. The court concludes plaintiffs are entitled to that sum on their counts of breach of warranty, contract, and negligence.
The court determines plaintiffs failed to prove the count of violation of CUTPA because they failed to prove defendant's conduct violated to any significant degree any of the criteria of the "cigarette rule" stated in Mclaughlin Ford v. Ford Motor Co.,192 Conn. 558, 567-68 (1984).
Based on the foregoing, judgment may enter in favor of the plaintiffs against the defendant HIP in the amount of $2300.
Robert Satter State Judge Referee